IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TYKARI BLACKMON,

        Plaintiff,

v.

PERCY MYERS and MARCIA HILL,

        Defendants.

Case No. 3:19-CV-01297-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a motion for summary judgment filed by Defendants Percy Myers, M.D., and Marcia Hill, Licensed Practical Nurse ("LPN") (Doc. 46). Plaintiff Tykari Blackmon requested and received an extension of time to respond to the motion but ultimately never filed a response.[1] For the reasons set forth below, the motion is granted.

### INTRODUCTION

On November 25, 2019, Plaintiff Tykari Blackmon, a prisoner in custody of the Illinois Department of Corrections ("IDOC"), initiated this action *pro se* pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville") (Doc. 1). Blackmon filed an Amended Complaint on December 9, 2019 (Doc. 12). His allegations relate to the medical treatment of a facial cyst adjacent to his left eye that caused pain, migraines, and blurred

---

[1] Pursuant to Local Rule 7.1(c), Plaintiff's lack of a response could be interpreted as an admission of the merits of the motion.

vision beginning in April 2018 (*Id.*). Blackmon proceeds on one count of deliberate indifference under the Eighth Amendment against each defendant for failing to provide adequate medical treatment for his facial cyst and associated pain (Doc. 15). Defendant Percy Myers is a licensed physician in the State of Illinois and has been employed as the Medical Director at Pinckneyville since June 13, 2018 (Doc. 47-2). Before his role as Medical Director, Dr. Myers worked as an independently contracted physician at Pinckneyville from May 2017 to June 2018 (*Id.*). Defendant Marcia Hill is an LPN in the State of Illinois and began her employment at Pinckneyville in March 2000 (Doc. 47-3).

Primarily, Blackmon argues that Defendants were deliberately indifferent in failing to adequately treat his facial cyst and accompanying symptoms including pain, blurred vision, headaches, interruptions in daily activities, and sleep deprivation. Specifically, Blackmon alleges that Dr. Myers and Hill failed to prescribe pain medication, and, further, that Dr. Myers caused a delay in medical care by not removing the cyst which prolonged suffering. In their joint motion for summary judgment, Defendants argue that, as demonstrated by the undisputed material facts, Blackmon's ailment did not qualify as a serious medical condition, and even if it did, he received adequate medical attention and treatment.

## FACTUAL BACKGROUND

On April 11, 2018, Blackmon reported to nurse sick call with complaints of dental pain in the lower left side of his mouth and a cyst on his left cheek near his eye (Doc. 47-4, pp. 18-21). During the visit, Blackmon self-reported pain from the facial cyst, especially while lying on his left side, and rated the pain level as a five out of ten (*Id.* at p. 21). The

non-party LPN who observed Blackmon referred him to a dentist, instructed him regarding his dental pain, referred him to a physician for the cyst, and provided him with Acetaminophen (*Id.* at pp. 18-21). The medical records for this visit also reflect that Blackmon did not mention headaches or blurry vision (*Id.*). Having been referred to a physician, Blackmon refused to discuss his condition with a different nurse three days later (*Id.* at p. 22). A week after his visit with the non-party LPN, Blackmon met with Defendant LPN Hill (*Id.*). Blackmon reported that he noticed a facial bump beginning in 2015 and expressed that he wanted it removed (*Id.*). Upon evaluation, Hill recorded that the bump to the left side of Blackmon's temple was soft and nontender (*Id.*). Hill also observed that the bump lacked redness and drainage (*Id.*). She instructed Blackmon to avoid touching the area and noted that he had already been referred to a physician (*Id.*). Hill did not prescribe any pain medication to Blackmon at this time (*Id.*). The medical notes from this visit also do not reflect any mention of headaches, blurry vision, or pain (*Id.*).

Three days later, on April 21, 2018, Defendant Dr. Myers examined Blackmon (*Id.* at p. 23). During this visit, Blackmon raised similar concerns with his facial cyst complaining that it became painful with applied pressure (*Id.*). Dr. Myers palpated the cyst, finding it soft and nontender, and diagnosed it as a lipoma, which is a noncancerous tumor or growth composed of fat cells[2] (*Id.*). The medical records reflect that Dr. Myers and Blackmon discussed the noncancerous nature of the lipoma and its low risk of infection (*Id.*).

---

[2] *See Medical Dictionary of Health Terms*, HARVARD HEALTH PUBLISHING, https://www.health.harvard.edu/j-through-p#L-terms (last visited July 26, 2022).

Dr. Myers further explained that removal of the lipoma would be strictly cosmetic (*Id.*). Based on his assessment, considering the lipoma was nontender during the visit, Dr. Myers did not prescribe any pain medication to Blackmon or recommend removal (*Id.*). Dr. Myers instructed Blackmon to return to the clinic if the lipoma caused any severe symptoms (*Id.*). Records of the visit, again, reflect that Blackmon did not report any headaches or blurry vision at this time (*Id.*).

Over the course of the next year, Blackmon interacted with many healthcare professionals for various types of sick call visits and assessments on over a dozen occasions (*Id.* at pp. 23-42, 58). Throughout these many interactions, there is no documentation of complaints from Blackmon regarding his facial cyst (*Id.*). During one visit in October 2018, Blackmon sought treatment for a red eye and denied any recent change in his vision (*Id.* at p. 33). As a result, he was instructed to return to the clinic immediately if his vision became affected, which he declined to do (*Id.*).

While his testimony indicates that the April 2018 visits are the only basis for this lawsuit against Hill and Dr. Myers (Doc. 47-1, pp. 46-47, 57), Blackmon saw both providers on other occasions as well. In June 2018, Hill performed segregation sick call rounds and signed the rounds chart indicating that Blackmon had no complaints (Doc. 47-4, p. 58). In September 2018, Blackmon suffered an elbow injury and was treated by a nurse who consulted Dr. Myers (*Id.* at pp. 29-30). Dr. Myers directed the nurse to treat the elbow injury and admit Blackmon to the infirmary for 23-hour observation (*Id.*). Blackmon did not mention the facial cyst during the visit or observation period (*Id.*). Dr. Myers examined Blackmon in February 2019 for another unrelated condition, and

Blackmon did not mention any concerns regarding his facial cyst or related symptoms (*Id.* at p. 38).

Not until August 14, 2019, 16 months after his visits with Hill and Dr. Myers, did Blackmon resurrect complaints of pain stemming from his facial cyst. At that time, Blackmon self-reported intermittent pain and hardening of the cyst (*Id.* at p. 44). The treating nurse referred Blackmon to a physician, provided him Acetaminophen, and instructed him to return if symptoms worsened (*Id.*). Days later, Blackmon filed a grievance stating that he was denied medical treatment by Dr. Myers on April 21, 2018, and that his facial cyst still hurt, impacted his sleep, and elicited bullying comments from other prisoners (Doc. 12, pp. 5-7). Blackmon asserted that he experienced migraines, faint spells, dizziness, and nausea (*Id.*). This is the first mention of migraines in the medical and grievance records. He also stated that he felt like he was "going to die" (*Id.*).

Blackmon saw a non-party nurse practitioner ("NP") on August 26, 2019 (Doc. 47-4, pp. 45-46). The NP observed Blackmon's facial cyst and noted that it appeared nickel-sized with redness and tenderness to the touch (*Id.*). To rule out a diagnosis of an abscess versus a lipoma, the NP prescribed an antibiotic along with Tylenol (*Id.*). Upon follow-up, the antibiotics produced no positive change, the NP assessed the cyst as a lipoma, and discussed removal risks with Blackmon, who signed a consent form to have the lipoma removed (*Id.* at pp. 47-48). The NP removed the lipoma (*Id.* at p. 48). In September 2019, Blackmon reported the removal wound was healing nicely (*Id.* at p. 49). Shortly thereafter, however, Blackmon filed a grievance stating that he still had migraines, blurry vision, red eyes, and oozing from the removal wound (Doc. 12, pp. 10-11). He also filed

an offender request stating that, even after removal, his facial cyst was swollen and he suffered migraines (Doc. 47-4, p. 51). In November 2019, he filed another offender request complaining of discharge from the lipoma removal site and continued migraines (*Id.*). Months later, in June 2020, Blackmon reported to medical staff that he suffered eye irritation and pain, but reported no vision changes (*Id.* at p. 67). Blackmon testified that he is not currently suffering any lasting effects from the lipoma since its removal in September 2019 (Doc. 47-1, p. 90).

## LEGAL STANDARD

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *see also Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004).

Once the moving party sets forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp.*, 477 U.S. at 322-24. A moving party is entitled to judgment as a matter of law where the nonmoving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, 477 U.S. at 323.

The party opposing summary judgment must offer admissible evidence in support of his version of events; hearsay evidence does not create a genuine issue of material fact. *Durling v. Menard, Inc.*, No. 18 C 4052, 2020 WL 996520, at *2 (N.D. Ill. Mar. 2, 2020) (citing *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 484 (7th Cir. 1996)). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmovant. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[i]nferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted).

## ANALYSIS

Defendants argue that summary judgment is appropriate because they were not deliberately indifferent to Blackmon's medical condition.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). To succeed on a claim of deliberate indifference, a plaintiff must show: (1) that he suffered from an objectively serious medical condition; and (2) that the individual defendant was deliberately indifferent to that condition. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011)

(citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)).

Regarding the first prong of deliberate indifference analysis, Defendants argue that Blackmon's facial cyst, which was ultimately diagnosed as a lipoma (not only by Dr. Myers, but later by a non-party NP), does not constitute an objectively serious medical condition. The Court tends to agree. A medical condition is objectively serious if "a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Lockett v. Bonson*, 937 F.3d 1016, 1022-23 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)) (internal quotation omitted). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010); *accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of *serious* harm" (internal quotation omitted) (emphasis added)).

Blackmon, in his Amended Complaint and deposition testimony, claims that his facial lipoma was extremely painful causing blurred vision, migraines, and interruption to his sleep and daily life. Lipomas, while typically benign, harmless, and nontender, can constitute serious medical conditions especially depending on associated symptoms.[3] A lipoma that causes the drastic, chronic symptoms alleged by Blackmon surely could

---

[3] Notably, courts have also found that lipomas, especially without any associated symptoms, do not qualify as serious medical conditions or needs. *See Oden v. Shah*, No. 17-CV-1134, 2019 WL 5748743, at *3 (S.D. Ill. Oct. 2, 2019); *Salgado v. Dr. Siddiqui*, No. 16-CV-268, 2018 WL 4772373, at *4-5 (S.D. Ill. Oct. 3, 2018); *Flores v. Welborn*, 119 Fed. App'x 6, 8-9 (7th Cir. 2004); *Thompson v. Godinez*, 561 Fed. App'x 515, 519 (7th Cir. 2014); *Martinez v. Hedrick*, 36 Fed. App'x 209, 211-12 (7th Cir. 2002).

qualify as a serious medical condition. *See Williams v. Godinez*, No. 13 C 8797, 2016 WL 4945016, at * 9 (N.D. Ill. Sept. 16, 2016) (chronic pain associated with plaintiff's multiple lipomas was an objectively serious medical condition); *see also Dismukes v. Baker*, No. 11-CV-3345, 2013 WL 28770, at *5 (C.D. Ill. Jan. 2, 2013) (plaintiff's large lipoma on the back of his head causing persistent headaches, neck and back pain, and excruciating pain with pressure constituted a serious medical need). Here, however, the record is devoid of any evidence of the chronic symptoms Blackmon alleges.

In his initial visit with a non-party nurse on April 11, 2018, Blackmon did report severe discomfort with a pain level of five out of ten and stated that his cyst caused pain when lying on his affected cheek. Three days later, he declined to discuss the issue with a different nurse because he had already been referred to a doctor. Four days after that, during his visit with Hill, Blackmon described his bump and asked for it to be removed. Absent from the medical records, however, is any indication of chronic pain. In fact, in the visit notes, Hill indicates that the bump was nontender to the touch. When he met with Dr. Myers, Blackmon self-reported pain only with applied pressure. Dr. Myers also recorded the cyst as nontender after pressing it during the examination. Blackmon received instructions from Dr. Myers to return if he had any severe symptoms. He declined to do so until well over a year later.

In the meantime, Blackmon saw many different nurses and medical providers for a variety of ailments on over a dozen occasions. He also refused nurse sick call multiple times within the same period. There is no mention of the facial cyst, ongoing migraines, or blurred vision within the records of those visits. The first mention in the record of these

purportedly chronic symptoms occurs on August 20, 2019, when Blackmon filed an offender grievance stating that he experienced migraines, faint spells, dizziness, nausea, difficulty sleeping, eating problems, physical pain, and humiliation from the facial cyst. After this grievance, a non-party NP removed the lipoma. A month after the lipoma removal, in another grievance, Blackmon claimed he was still suffering from migraines and blurry vision. The record does not support Blackmon's contention that, over the course of the 16 months following his visits with Hill and Dr. Myers, he suffered chronic pain, migraines, blurry vision, and lack of sleep or that such symptoms were a product of the lipoma. If he was suffering from these symptoms, there is no record that he told any medical or prison staff member until filing a grievance in August 2019. The fact that Blackmon did not mention the chronic symptoms or the lipoma in subsequent medical visits for over a year persuades the Court that Blackmon's lipoma does not constitute a serious medical condition, as the record does not support any contention that the lipoma actually resulted in significant injury or infliction of pain.

Even if Blackmon's lipoma should be considered a serious medical condition, he would still be required to show that a prison official had subjective knowledge of—and then disregarded—a substantial risk to his health. *See Gayton,* 593 F.3d at 620. A plaintiff need not show the individual defendant "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles*, 771 F.3d at 409; *see also Hammond v. Rector*, 123 F. Supp. 3d 1076, 1086 (S.D. Ill. 2015) ("isolated occurrences

of deficient medical treatment are generally insufficient to establish . . . deliberate indifference").

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). This is in contrast to a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[ ] that [he] did." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016) (alterations in original)). Further, a prisoner's dissatisfaction with a medical professional's prescribed course of treatment does not give rise to a successful deliberate indifference claim unless the treatment is so "blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (quoting *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974)). "[T]he Eighth Amendment does not reach disputes concerning the exercise of a professional's medical judgment, such as disagreement over whether one course of treatment is preferable to another." *Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017) (citing *Snipes*, 95 F.3d at 591). A delay in treatment may also show deliberate indifference if it "exacerbated the inmate's injury or unnecessarily prolonged his pain." *Perez v. Fenoglio,* 792 F. 3d 768, 777-78 (7th Cir. 2015). Whether the length of delay is tolerable depends upon the seriousness of the condition and the ease of providing treatment. *Id.* at 778.

Along with his Amended Complaint, Blackmon clarified in his deposition that he brought this suit against Hill because she failed to prescribe pain medication after their

visit on April 18, 2018, causing him to suffer unnecessarily. Blackmon is suing Dr. Myers also for failing to provide pain medication and for refusing to remove the lipoma during their visit on April 21, 2018 which caused a delay in care and prolonged suffering.

Blackmon has not presented evidence showing that Hill was aware of, let alone consciously disregarded, his pain or an excessive risk to his health. *See Farmer*, 511 U.S. at 837. Medical records indicate that, during his visit with Hill, Blackmon mentioned a bump had been present on his face since 2015, and he wanted it removed. She assessed the bump as nontender with no redness or drainage. Hill instructed Blackmon to avoid touching the bump and noted he was already referred to see a physician. Based on the medical records, there is no evidence that Hill knew of the chronic symptoms that Blackmon alleges. Further, Hill categorized the bump as nontender. Based on her assessment, there was no need for pain medication at that time. Blackmon presents no evidence that Hill's medical decision not to prescribe pain medication was "blatantly inappropriate" or even unreasonable. *Machicote v. Roethlisberger*, 969 F.3d 822, 828 (7th Cir. 2020) (quoting *Pyles*, 771 F.3d at 409); *see also Snipes*, 95 F.3d at 592 ("A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition.'").

Blackmon has also failed to present facts showing that Dr. Myers was aware of chronic pain, severe symptoms, or an excessive risk to Blackmon's health. Per the medical records, Blackmon did not mention any persistent or severe symptoms to Dr. Myers, only

that the cyst was painful with applied pressure. Upon palpating the lipoma, Dr. Myers noted it was nontender. He instructed Blackmon that the lipoma was noncancerous, not at risk for infection, and he directed Blackmon to return if symptoms worsened or persisted. Equipped with Blackmon's self-report and his own examination, Dr. Myers chose not to prescribe pain medication. Based on this evidence, as with Hill, Dr. Myers's decision to not prescribe pain medication was not blatantly inappropriate and does not demonstrate deliberate indifference.

Further, Blackmon's contention that Dr. Myers delayed medical treatment prolonging Blackmon's suffering also lacks support in the record. A delay in treating a non-life-threatening but painful condition may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged the prisoner's pain. *Arnett,* 658 F.3d at 753 (citing *McGowan v. Hulick,* 612 F.3d 636, 640 (7th Cir. 2010)).

Dr. Myers did not delay treatment to remove Blackmon's facial lipoma, instead, he determined that removal would be merely cosmetic and not medically necessary. Dr. Myers's exercise of medical judgment did not amount to a delay in treatment. Moreover, when Blackmon saw Dr. Myers ten months later for an unrelated condition, Blackmon did not mention his lipoma or any related symptoms. This is not a situation where the record demonstrates a steady flow of complaints of escalating pain, which could indicate that a delay unreasonably prolonged pain and suffering. Here, the record simply contains no evidence that a delay in treatment caused Blackmon to needlessly suffer.

Further, to infer deliberate indifference on the basis of a physician's treatment decision, the decision must be "such a substantial departure from accepted professional

judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Collignon v. Milwaukee Cty.*, 163 F.3d 982, 987-88 (7th Cir. 1998). Blackmon offers no evidence to suggest such a departure in this instance. Here, Dr. Myers decided that removal of the lipoma was not necessary. Moreover, Blackmon provides no evidence that removal of the lipoma was necessary to alleviate his purported symptoms. After a non-party NP removed the lipoma over a year later, Blackmon filed grievances complaining of persisting symptoms like headaches and blurry vision. Apparently, removal of the lipoma did not resolve his purported symptoms, which indicates that the lipoma was not the ultimate source of such symptoms.

On this record, the Court finds that Defendants are entitled to summary judgment on Blackmon's deliberate indifference claims.

## CONCLUSION

For these reasons, the motion for summary judgment filed by Defendants Percy Myers and Marcia Hill (Doc. 46) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment and close this case.

**IT IS SO ORDERED.**

**DATED:  July 27, 2022**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**